IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dianna Frykenberg,<br><br>*On behalf of herself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Pitsilides Management, LLC; George Pitsilides; Sharon Pitsilides; and Doe Corporations 1-4;<br><br>Defendants. | Civil Action No.  4:19-cv-02971-MGL |

## COLLECTIVE ACTION COMPLAINT

### I. Introduction

1.      Dianna Frykenberg, on behalf of herself and all similarly-situated individuals, bring this action against Defendants Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Pitsilides Management, LLC; George Pitsilides; Sherry Pitsilides; and Doe Corporations 1-4 (collectively "Defendants" or "Captain George's"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA").

2.    Plaintiff Dianna Frykenberg worked for Defendants at the Captain George's Seafood Restaurant in Myrtle Beach, South Carolina (the "Myrtle Beach Captain George's restaurant").

3.    Plaintiff and her fellow servers at the Myrtle Beach Captain George's restaurant have been subject to the same policies and practices that violate the FLSA.

4.    Plaintiff brings this action on behalf of herself and similarly situated current and former servers at the Myrtle Beach Captain George's restaurant who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA by Defendants.

**II. Jurisdiction and Venue**

5.    Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

6.    Venue in this Court is proper under 28 U.S.C. § 1391(b).

**III. Parties**

**<u>Plaintiff</u>**

**Dianna Frykenberg**

7.    Plaintiff is an individual residing in Horry County, South Carolina.

8.    Plaintiff has given written consent to join this action.

9.    At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the FLSA.

**<u>Defendants</u>**

**Captain George's of South Carolina, LP**

10.    Defendant Captain George's of South Carolina, LP is a foreign limited partnership, with its headquarters in Virginia.

2

11.     Captain George's of South Carolina, LP's owner and President is George Pitsilides.

12.     Captain George's of South Carolina, LP is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

13.     Captain George's of South Carolina, LP is an "employer" of Plaintiff and similarly situated servers as that term is defined by the FLSA.

14.     Captain George's of South Carolina, LP applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at the Myrtle Beach Captain George's restaurant, including policies, practices, and procedures relating to payment of minimum wages.

15.     Captain George's of South Carolina, LP maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

16.     Captain George's of South Carolina, LP has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

17.     Captain George's of South Carolina, LP's gross revenue exceeds $500,000 per year.

**Captain George's of South Carolina, Inc.**

18.     Defendant Captain George's of South Carolina, Inc. is a foreign corporation with its headquarters in Virginia.

19.     Captain George's of South Carolina, Inc.'s owner and President is George Pitsilides.

20.     Captain George's of South Carolina, Inc. is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

21.     Captain George's of South Carolina, Inc. is an "employer" of Plaintiff and similarly situated servers as that term is defined by the FLSA.

22.     Captain George's of South Carolina, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at the Myrtle Beach Captain George's restaurant, including policies, practices, and procedures relating to payment of minimum wages.

23.     Captain George's of South Carolina, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

24.     Captain George's of South Carolina, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

25.     Captain George's of South Carolina, Inc.'s gross revenue exceeds $500,000 per year.

**Pitsilides Management, LLC**

26.     Defendant Pitsilides Management, LLC is a foreign limited liability company with its headquarters in Virginia.

27.     Pitsilides Management, LLC's President is George Pitsilides.

28.     Pitsilides Management, LLC is headquartered at 1956 Laskin Road, Virginia Beach, Virginia 23454.

29.     Pitsilides Management, LLC is an "employer" of Plaintiffs and similarly situated servers as that term is defined by the FLSA.

30.     Through Pitsilides Management, LLC, Defendants centralize their payroll and benefits policies, practices, and operations.

31.     Pitsilides Management, LLC receives a management fee from the Myrtle Beach Captain George's restaurant for marketing efforts, payroll services, benefits management, food, beverage and supply purchasing services, and some premises and equipment management services.

32.     Pitsilides Management, LLC receives reports from Myrtle Beach Captain George's restaurant every two weeks regarding hours worked by the employees at the Myrtle Beach Captain George's restaurant, generates paychecks, and overnights the paychecks to the Myrtle Beach Captain George's restaurant.

33.     Pitsilides Management, LLC maintains the payroll records for all of Defendants' employees.

34.     Pitsilides Management, LLC maintains an operating account used to cover operating costs at the Myrtle Beach Captain George's restaurant.

35.     Pitsilides Management, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all servers at the Myrtle Beach Captain George's restaurant, including policies, practices, and procedures relating to payment of minimum wages.

36.     Pitsilides Management, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, timekeeping, payroll, expense reimbursements, deductions, tips, and other practices.

37.     Pitsilides Management, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

38.     Pitsilides Management, LLC's gross revenue exceeds $500,000 per year.

**George Pitsilides**

39.     Defendant George Pitsilides is the founder, owner, and operator of all of the Defendant entities.

40.     George Pitsilides is the owner and president of Capt. George's Seafood Restaurants, LP.

41.     George Pitsilides is the owner and president of Captain George's of South Carolina, LP.

42.     George Pitsilides is the owner and president of Captain George's of South Carolina, Inc.

43.     George Pitsilides is the owner and president of Pitsilides Management, LLC.

44.     George Pitsilides lives in Virginia Beach, Virginia.

45.     George Pitsilides is a hands-on owner who oversees operations in all four of his restaurants.

46.     In an article for U.S. Business Executive magazine, George Pitsilides stated that he is a hands-on owner who oversees operations in all four of his restaurants.

47.     Upon information and belief, George Pitsilides operates and controls the Defendant corporations from their headquarters at 1956 Laskin Road, Virginia Beach, Virginia 23454.

48.     At all relevant times, George Pitsilides has been an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA.

49.     At all relevant times, George Pitsilides has been actively involved in managing the operations of the Mrytle Beach Captain George's.

50.     At all relevant times, George Pitsilides has had control over Defendants' pay policies.

51.     At all relevant times, George Pitsilides has had power over personnel and payroll decisions at the Mrytle Beach Captain George's.

52.     At all relevant times, George Pitsilides has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

53.     At all times relevant, George Pitsilides has had the power to transfer the assets and liabilities of each of the named corporate defendants.

54.     At all relevant times, George Pitsilides has had the power to declare bankruptcy on behalf of each of the named corporate defendants.

55.     At all relevant times, George Pitsilides has had the power to enter into contracts on behalf of each of the named corporate defendants.

56.     At all relevant times, George Pitsilides has had the power to close, shut down, and/or sell each of the named corporate defendants.

57.     The Myrtle Beach Captain George's restaurant functions for George Pitsilides' profit.

58.     George Pitsilides has influence over how the Myrtle Beach Captain George's restaurant can be run more profitably.

**Sharon Pitsilides**

59.     Defendant Sharon Pitsilides is a founder, owner, and operator of all of the Defendant entities.

60.     Upon information and belief, Sharon Pitsilides lives in Virginia Beach, Virginia.

61.     Upon information and belief, Sharon Pitsilides operates and controls the Defendant corporations from their headquarters at 1956 Laskin Road, Virginia Beach, Virginia 23454.

62.     At all relevant times, Sharon Pitsilides has been an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA.

63.     Sharon Pitsilides is an employee of Pitsilides Management, LLC.

64.     Sharon Pitsilides has worked alongside her husband in operating the Captain George's restaurants for forty years.

65.     George Pitsilides has credited the success of the Captain George's restaurants to he and Sharon Pitsilides' team approach and the way they handle everyday operations together.

66.     At all relevant times, Sharon Pitsilides has been actively involved in managing the operations of the Myrtle Beach Captain George's restaurant.

67.     At all relevant times, Sharon Pitsilides has had control over Defendants' pay policies.

68.     At all relevant times, Sharon Pitsilides has had power over personnel and payroll decisions at the Myrtle Beach Captain George's restaurant.

69.     On at least one occasion, Sharon Pitsilides has been involved in the decision to hire, fire, and/or discipline employees who worked at Captain George's.

70.     At all relevant times, Sharon Pitsilides has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

71.     At all times relevant, Sharon Pitsilides has had the power to transfer the assets and liabilities of each of the named corporate defendants.

72.     At all relevant times, Sharon Pitsilides has had the power to declare bankruptcy on behalf of each of the named corporate defendants.

73.     At all relevant times, Sharon Pitsilides has had the power to enter into contracts on behalf of each of the named corporate defendants.

74.     At all relevant times, Sharon Pitsilides has had the power to close, shut down, and/or sell each of the named corporate defendants.

75.     The Myrtle Beach Captain George's restaurant functions for Sharon Pitsilides' profit.

76.     Sharon Pitsilides has influence over how the Myrtle Beach Captain George's restaurant can be run more profitably.

**Doe Corporations 1-4**

77.     Upon information and belief, Defendants own and operate other corporate entities and/or limited liability companies that also qualify as Plaintiffs' "employers" under the FLSA.

**IV.     Facts**

**COLLECTIVE-WIDE FACTUAL ALLEGATIONS**

78.     During all relevant times, Defendants have operated the Myrtle Beach Captain George's restaurant.

79.     Plaintiff and the similarly situated persons she seeks to represent are current and former servers employed by Defendants at the Myrtle Beach Captain George's restaurant.

80.     The servers' claims focus on Defendants' failure, in a variety of ways, to properly claim a tip credit against their minimum wage obligation to servers.

**Retention of Tips**

81.     Over the years, Defendants have retained at least hundreds of thousands of dollars in tips earned by the servers at the Myrtle Beach Captain George's restaurant in their own operating account.

9

82.     From May 2014 to early September 2018, Defendants retained almost $300,000 in server tips in their operating account.

83.     Defendants require servers to pay a nightly "house tip out." The servers are required to pay a percentage (between 2% and 3%) of the sales they completed on each shift out of their tips to Captain George's.

84.     This house tip out money was deposited in Captain George's operating account.

85.     Defendants distributed some portion of the house tip out money to other employees, including bussers, bartenders, and buffet runners, as wages.

86.     Defendants retained another portion of the house tip out money.

87.     By retaining any portion of servers' tips, Defendants have violated the requirements for maintaining a valid tip pool under the FLSA.

88.     Some or all of the bussers, buffet runners, and bartenders were not customarily or regularly engaged in customer service, and therefore were not permitted to be included in Defendants' tip pool.

89.     Defendants also included management employees in the tip pool who were not permitted to share in the servers' tips.

90.     Defendants occasionally required additional tip out payments to cover expenses needed for operation of the store. For example, Defendants required servers to provide a tip out when the restaurant needed to purchase new silverware or new POSi Touch cards.

**Payouts to Silverware Rollers**

91.     Defendants also required servers to share tips with and/or pay the wages of silverware rollers. Silverware rollers were not customarily or regularly engaged in customer service, and therefore were not permitted to share in the tip pool.

92.    The silverware rollers were not employees of Defendants.

93.    The only money the silverware rollers received for their work was money they received from servers.

94.    Defendants set the amount of money that servers were required to pay to the silverware rollers per shift.

95.    Defendants collected the silverware money from the servers and distributed them on a nightly basis, in cash, to the silverware rollers.

96.    Defendants selected all of the individuals who rolled silverware at the Myrtle Beach Captain George's restaurant. No persons were permitted to roll silverware without being approved by Defendants.

97.    The silverware rollers did not wear uniforms.

98.    The silverware rollers completed their work in a breakroom outside the view of Defendants' guests.

99.    Defendants were not permitted to require servers to pay for costs associated with providing rolled silverware to Defendants' guests. These costs serve the benefit of Defendants.

**Uniform Deductions**

100.    Defendants required servers to purchase one uniform shirt at the beginning of their employment. If the server worked for Defendants for six months, they either received another work shirt for free, or were reimbursed for the uniform shirt they purchased.

**Wage Underpayment**

101.    Defendants purported to pay servers tip credit minimum wage, which is $2.13 per hour.

102.    However, during some or all of the time period relevant, Defendants have paid

servers $2.125 per hour.

103.    Defendants also paid servers at the wrong overtime rate when the servers worked overtime.

104.    After *Gagliastre v. Captain George's* was filed, Defendants paid some or all of the servers who worked since May 2014 the half-cent per hour, or other amount (in the case of overtime hours), that they had underpaid them during their employment. However, their failure to pay these wages at the time they were due rendered them ineligible to claim a tip credit from the servers' wages.

**Failure to Inform Servers of the Requirements for Taking a Tip Credit**

105.    Until approximately December 2017, Defendants failed to properly inform servers of the requirements for taking a tip credit under the FLSA.

106.    Until approximately December 2017, Defendants told servers only that they would be paid $2.13 per hour (which was not true) and that they had to participate in the "house tip out." Defendants did not explain the requirements for taking a tip credit.

107.    Starting in December 2017, Defendants began giving servers an inaccurate and misleading notice.

108.    Starting in December 2017, Defendants began distributing a notice that stated, among other falsehoods, that:

> 100% of the amounts that are "tipped out" by servers are paid out to the buffet runners, bussers, and bartenders who make up the rest of our service team. In fact, on the vast majority of days, your employer subsidizes the "tipped out" amounts in order to reach the wage rate payable to bussers, buffet runners, and bartenders. *No portion of the tip pool benefits your employer.* (emphasis in original)

109.    Despite this representation, Defendants continued to retain a portion of their servers' tips until at least August of 2018, and perhaps longer.

12

110.    Defendants failed to inform servers of the amount of the cash wage that is to be paid to them by Defendants.

111.    Defendants failed to inform servers of the additional amount by which the wages of the servers are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

112.    Defendants failed to inform servers that all tips received by them must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

113.    Defendants failed to inform servers that the tip credit shall not apply to any employee who has not been informed of these requirements of 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59.

**Defendants' failure to inform Plaintiffs of their FLSA rights and/or Defendants' unlawful pay practices.**

114.    Because Defendants did not provide some or all of the servers proper notice of their rights under the FLSA, as required by the FLSA, and/or Defendants did not inform some or all of the servers about Defendants' retention of tips and other unlawful pay practices, the statute of limitations on their claims are tolled until they obtain an attorney or actual knowledge of their rights.

115.    Defendants have not provided complete and accurate notice of the tip credit requirements of the FLSA to the servers at the Myrtle Beach Captain George's restaurant, nor have they provided the servers at the Myrtle Beach Captain George's restaurant with an accurate description of their tip pool

116.    It was not conclusively discovered until November 2018 that Defendants had

retained a portion of the servers' tips in their own operating account. Prior to that, Defendants had insisted that all of the tip money was distributed to buffet runners, bussers, and bartenders.

117.    Some of Defendants' current and former employees (those employed between May 2014 and early 2018) were arguably provided with notice of the possible legal claims asserted here in April-July of 2018, when notice of an FLSA collective action was distributed in the case of *Gagliastre v. Captain George's*, No. 2:17-cv-379 (E.D. Va.), describing similar claims to those asserted here.

118.    Other employees, including those employees who worked before May 2014, may have never retained an attorney or otherwise been provided with actual knowledge of their rights under the FLSA.

119.

120.    From May 2014 to August 2018, Defendants retained approximately $300,000 in server tips.

121.    Instead of informing servers about their rights as tipped employees, as required by the FLSA, Defendants misinformed and misled servers about their compensation and their rights.

122.    Defendants did not tell servers that hundreds of thousands of dollars of their tip money was being retained by the company itself.

123.    Defendants did not tell servers that they were paying them a half-cent less than the legal minimum for all hours worked, but instead told servers that they paid them the tipped minimum wage.

124.    Defendants did not tell servers about the requirements of a valid tip pool, including, notably, that employees who are not engaged in customer service (such as silverware rollers, buffet runners, some bartenders, managers, and the company itself) are not permitted to share in server

14

tips.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

125.    Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Dianna Frykenberg**

126.    Dianna Frykenberg worked as a server at the Myrtle Beach Captain George's restaurant from April 2013 to September 2018.

127.    Frykenberg typically worked 40 hours per week for Defendants.

128.    Frykenberg was required to work some of the time off the clock. When she was approaching 40 hours, Defendants' managers instructed her and others to "manage their hours," which meant to clock out and keep working.

129.    As a server, Frykenberg's primary job duties included waiting on guests.

130.    Frykenberg tipped out 3% of her sales to the restaurant on each shift as "house tip out".

131.    Defendants distributed some or all of Frykenberg's tips to non-tipped employees, and/or employees not permitted to participate in the tip pool. Defendants also retained some of Frykenberg's tips themselves.

132.    Frykenberg was required to pay for her uniform shirt when she started working for Defendants.

133.    Frykenberg was required to pay a portion of her tips each day to silverware rollers. The amount she tipped out to silverware rollers was set by Defendants, and the silverware rollers were selected by Defendants.

134.    Frykenberg was paid $2.125 per hour for all hours worked until some time in 2017, when she started to receive $2.13 per hour.

135.    Frykenberg was never provided accurate notice of the tip credit provisions of the FLSA by Defendants.

136.    Defendants never informed and Frykenberg was never aware that the Defendants themselves retained some of the house tip out money.

**V.      Collective Action Allegations**

137.    Plaintiff brings this action on behalf of herself and all similarly situated current and former servers employed at the Myrtle Beach Captain George's restaurant (the "FLSA Collective").

138.    Excluded from the FLSA Collective is any individual who opted into *Gagliastre v. Captain George's Seafood Restaurant*, No. 2:17-cv-379, that was pending in the U.S. District Court for the Eastern District of Virginia, to the extent that that the Settlement Agreement in that case covers the entire time period of the individual's claims.

139.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, failing to provide notice of the tip credit as required by the FLSA, misappropriating their tips, making impermissible deductions from their wages, and refusing to pay the proper payrate. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

140.    Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the FLSA Collective.

141.    Defendants are aware or should have been aware that the conduct described herein is prohibited by federal law.

142.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

143.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

144.    The FLSA Collective members are readily identifiable and ascertainable.

145.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

146.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## VI.    Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

147.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

148.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

149.    Plaintiff and the FLSA Collective were not given proper notice of the tip provisions of the FLSA.

150.   Plaintiff and the FLSA Collective were denied proper minimum wage because Defendants paid them $2.125 per hour, which is less than the permissible minimum wage minus a tip credit.

151.   Plaintiff and the FLSA Collective were denied proper minimum wage because they were required to share tips with parties and individuals who are not permitted to be included in a valid tip pool, including Defendants themselves, Defendants' bartenders, silverware rollers, bussers, buffet runners, and managers.

152.   Plaintiff and the FLSA Collective were denied proper minimum wage because they were required to pay for uniforms and other expenses for the benefit of Defendants.

153.   As a result of Defendants' policies and practices, they were not permitted to take a tip credit from the wages of Plaintiff and the FLSA Collective.

154.   By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

155.   Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

156.   As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiff Dianna Frykenberg prays for all of the following relief:

A.   Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

18

B.      Unpaid minimum wages and an equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA.

D.      An award of prejudgment and post-judgment interest.

E.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

F.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Glenn V. Ohanesian
Glenn V. Ohanesian
Ohanesian & Ohanesian
504 North Kings Highway
P. O. Box 2433
Myrtle Beach, SC 29578
Telephone: 843-626-7193
Facsimile: 843-492-5164
Email: OhanesianLawFirm@cs.com

Andrew Biller (*pro hac vice application forthcoming*)
Trial Counsel
Andrew Kimble (*pro hac vice application forthcoming*)
Philip Krzeski (*pro hac vice application forthcoming*)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
513-452-3442 (Phone)
614-340-4620 (Fax)
(abiller@billerkimble.com)
(akimble@billerkimble.com)
(pkrzeski@billerkimble.com)

C. Ryan Morgan (*pro hac vice application*

*forthcoming*)
Morgan & Morgan, P.A.
20 N. Orange Ave., 14th Floor
Orlando, Florida 32802-4979
407 420-1414 (Phone)
407-245-3401 (Fax)
(rmorgan@forthepeople.com)

Andrew Frisch (*pro hac vice application
forthcoming*)
Morgan & Morgan, P.A.
600 N. Pine Island Rd., Ste. 400
Plantation, FL 33324-1311
954-318-0268 (Phone)
954-327-3013 (Fax)
(afrisch@forthepeople.com)

Attorneys for Plaintiffs

## Jury Demand

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Glenn V. Ohanesian
Glenn V. Ohanesian
Ohanesian & Ohanesian
504 North Kings Highway
P. O. Box 2433
Myrtle Beach, SC 29578
Telephone: 843-626-7193
Facsimile: 843-492-5164
Email: OhanesianLawFirm@cs.com