IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Dianna Frykenberg, on behalf of herself and others similarly situated, | C/A No. 4:19-cv-02971-SAL |
| Plaintiff, | |
| v. | **ORDER** |
| Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Pitsilides Management, LLC; George Pitsilides; Sharon Pitsilides; and Doe Corporations 1-4, | |
| Defendants. | |

This matter is before the court on Plaintiff Dianna Frykenberg's ("Plaintiff")[1] Motion for Conditional Certification of a Collective Action (the "Motion") pursuant to section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216. [ECF No. 9.] Having reviewed the Parties' filings in this case, the court finds the matter is ripe for consideration. For the reasons set forth herein, the Motion is granted.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was a tipped server at Captain George's Seafood Restaurant in Myrtle Beach, South Carolina. She filed this collective action on behalf of herself and others similarly situated, alleging various violations of the minimum wage provisions of the FLSA. [ECF No. 1, Compl.] Plaintiff alleges that Defendants violated the tip-credit provisions of the FLSA by retaining tips from a nightly tip out in their operating account, requiring servers to share tips with silverware rollers, requiring servers to purchase a uniform shirt, and paying less than the hourly tipped minimum

---

[1] Three other individuals consented to join the suit. [ECF No. 1-1.]

wage. Plaintiff seeks an order conditionally certifying this action as a collective action under the FLSA and permission to send an opt-in notice to similarly situated individuals. [ECF No. 9.] Defendants Captain George's of South Carolina, LP; Captain George's of South Carolina, Inc.; Pitsilides Management, LLC; George Pitsilides; and Sharon Pitsilides ("Defendants") filed a Memorandum in Opposition. [ECF No. 18.] Plaintiff replied. [ECF No. 20.] The court held a hearing on the Motion on September 25, 2020.

Interestingly, this above-captioned matter is nearly identical to another FLSA collective action that was originally filed in this District, later transferred to the Eastern District of Virginia, and thereafter conditionally certified and settled. *See Gagliastre v. Captain George's Seafood Rest., LP et al.*, No. 2:17-cv-379 (E.D. Va.). The similarities and differences between this suit and *Gagliastre* underlie Defendants' objections to conditional certification.

## LEGAL STANDARD

The FLSA permits a plaintiff to bring a collective action on behalf of herself and other employees that are "similarly situated" to the plaintiff. *See* 29 U.S.C. § 216(b). The collective action provision, 29 U.S.C. § 216(b), provides,

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

"In order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion in appropriate cases to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" *Purdham v. Fairfax Cty. Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Certification of a collective action is a two-stage process. *See Turner v. BFI Waste Servs., LLC*, 268 F. Supp. 3d 831, 840–41 (D.S.C. 2017). First, "a plaintiff seeks conditional certification by the district court in order to provide notice to similarly situated plaintiffs" that they can "opt-in" to the collective action. *See Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367–68 (D.S.C. 2012). At this "notice stage," the court reviews the pleadings and affidavits to determine whether the plaintiff has carried her burden of showing she is similarly situated to the proposed class members. *Id.* at 368. If the court determines that the proposed class members are similarly situated, the court will conditionally certify the class. *Id.* at 841. The putative class members are then given notice and the opportunity to "opt-in," and the action proceeds as a representative action throughout discovery. *Higgins v. James Doran Co., Inc.*, No. 2:16-cv2149, 2017 WL 3207722, at *1 (D.S.C. July 28, 2017).

Then, in the second stage of collective certification, a defendant may move to decertify the collective action after discovery by "pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief." *Id.* at *2. Upon such a motion, the court will apply a heightened standard to the "similarly situated" analysis. *Steinberg v. TQ Logistics, Inc.*, No. 0:10-cv-2507, 2011 WL 1335191, at *2 (D.S.C. Apr. 7, 2011). For example, the court may consider "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 3:12-cv-2370, 2013 WL 1874848, at *3 (D.S.C. May 3, 2013) (internal quotation marks and alterations omitted). If the court finds that the plaintiffs are not, in fact, similarly situated, the court may

decertify the class, dismiss without prejudice the opt-in plaintiffs' claims, and permit the named plaintiff to proceed on her individual claims. *Id.*

## DISCUSSION

The present matter is before the court pursuant to the first step of the two-step process with its more lenient standard. Plaintiff seeks (1) conditional certification to allow this matter to proceed as a collective action; (2) approval of notice and the methods of sending notice; and (3) to require Defendants to provide names, last known addresses, telephone numbers, email addresses, dates of employment, and job titles for the putative collective class. [ECF No. 9-1.]

### A. Similarly Situated.

A court should conditionally certify a collective action and authorize notice where the members "share common underlying facts and do not require substantial individualized determinations for each class member[.]" *Turner*, 268 F. Supp. 3d at 835 (citing *Purdham*, 629 F. Supp. 2d at 549). At this first stage, the burden of demonstrating that a plaintiff and putative class members are "similarly situated" is fairly lenient and requires "only a modest factual showing that members of the proposed class are 'victims of a common policy or plan that violated the law.'" *Higgins*, 2017 WL 3207722, at *1 (citing *Purdham*, 629 F. Supp. 2d at 548).

Plaintiff here alleges that she and similarly situated individuals were subject to the same illegal pay practices at Defendants' Myrtle Beach location. [ECF No. 9-1 at pp.5–11.] Specifically, Plaintiff alleges that Defendants retained servers' tips for themselves, required servers to share tips with silverware rollers, and took "kickbacks" from wages in the form of a required uniform purchase. *See id.* Further, Plaintiff alleges that she and similarly situated individuals were paid less than $2.13 per hour and were not provided the required notice of the FLSA tip-credit

4

provisions. *Id.* Plaintiff submitted declarations attesting to these allegations. [ECF Nos. 9-2, 9-3, 9-4.]

Defendants oppose conditional certification, arguing that conditional certification is not proper because the same individuals who would be a part of this collective action could have opted in to *Gagliastre*. [ECF No. 18 at pp.9–10.] Additionally, Defendants argue that there is no longer a class of similarly situated servers. *Id.* at pp.10–14. Immediately after *Gagliastre* was filed, Defendants corrected the incorrect half-cent hourly wage error, started issuing a written tip-credit notice (prior to *Gagliastre*, Defendants claim they gave oral notice), and stopped requiring employees to purchase a uniform shirt. *See id.* Given the passing of time and the changes to Defendants' policies as a result of *Gagliastre*, Defendants contend that there is no remaining group of similarly situated servers.

At the start of the hearing, the court asked the parties to focus their arguments on whether there is a similarly situated class of servers given that Defendants' policies changed over the relevant period. In response, Plaintiff focused her argument on one common policy that she alleges continued after *Gagliastre*—Defendants keeping a portion of servers' nightly tip out in their operating account. While the court remains concerned that Plaintiff is not similarly situated to other servers in terms of many of the alleged FLSA violations (the half-cent hourly wage error, the uniform purchase requirement, and the oral/written notice of tip-out policies), it concludes that Plaintiff has met the low threshold required for conditional certification. Plaintiff alleges, with supporting declarations, that during the entirety of the relevant period servers were paying into a nightly tip pool, and Defendants were keeping a portion of the tips paid into the tip pool. [ECF No. 1 at ¶¶ 81–82, 84, 87; ECF No. 9-2 at ¶ 6; ECF No. 9-3 at ¶ 5; ECF No. 9-4 at ¶ 5.]

Based on the facts alleged in relation to Defendants keeping a portion of servers' tips, the court finds that Plaintiff has met the lenient standard at this stage for demonstrating that the potential opt-in plaintiffs are similarly situated. Therefore, the court grants conditional class certification.

**B. Opt-in Period.**

Plaintiff requests a 90-day opt-in period, and Defendants request a 30-day opt-in period. "[D]istrict courts in the Fourth Circuit regularly authorize opt-in periods between thirty and sixty days." *Regan v. City of Charleston*, S.C., No. 2:13-cv-3046, 2014 WL 3530135, at *10 (D.S.C. July 16, 2014). Given the similarities and overlap between this matter and *Gagliastre*, the court concludes that a 60-day opt-in period is sufficient. See Byard v. Verizon W. Va., Inc., 287 F.R.D. 365, 373 (N.D. W. Va. 2012) ("[T]he Court finds that an opt-in period of sixty days from the date of mailing sufficiently balances both parties' concerns and is reasonable under the circumstances of this case."). The court will allow 60 days from the date that Plaintiff mails the notices to potential opt-in plaintiffs.

**C. The Notice.**

A collective action notice is intended to give potential opt-in plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. The court may approve a notice that is "timely, accurate, and informative." *Id.* at 172. It has "broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *Regan*, 2014 WL 3530135, at *7. "[W]hen exercising its broad discretion to craft appropriate notices in individual cases, District Courts should consider the overarching policies of the FLSA's collective suit provisions." *Id.* These policies "require that the proposed notice provide accurate and timely notice concerning the

pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Id.* (quoting *Butler,* 876 F. Supp. 2d at 574).

"Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Hose v. Henry Indus., Inc.*, 49 F. Supp. 3d 906, 919 (D. Kan. 2014), *order clarified by* No. 13-2490, 2014 WL 5510927 (D. Kan. Oct. 31, 2014) (quoting *Sylvester v. Wintrust Fin. Corp.,* 12 C 01899, 2013 WL 5433593, at *6 (N.D. Ill. Sept. 30, 2013)). Here, Plaintiff offers a proposed notice, to which Defendants object in several respects.

1. **Section 1: Introduction and a Request for Reference to *Gagliastre*.**

First, Defendants argue that Section 1 of the proposed notice should include the following line: "Servers who participated in *Gagliastre v. Captain George's of South Carolina, LP*, or *Smith v. Captain George's of South Carolina, LP*, are not eligible to join the Lawsuit unless they worked at the restaurant after August 16, 2018." [ECF No. 18 at p.15.] In response, Plaintiff argues that this language is confusing to an average person. [ECF No. 20 at p.11.] To avoid the confusion, Plaintiff proposes having Defendants exclude from the class list anyone who (1) opted in to *Gagliastre* and (2) those who stopped working for Defendants prior to August 16, 2018. *Id.* The court agrees with Plaintiff that exclusion of these severs from the class list is the more appropriate resolution of this point of disagreement. Defendants must exclude these individuals before providing the list to Plaintiff.

2. **Section 2: "What is this case about?"**

Second, Defendants object to Plaintiff's use of a bulleted list in this section, as well as Plaintiff's description of Defendants' denials. [ECF No. 18 at pp. 15–16.] Defendants claim that the formatting inappropriately emphasizes Plaintiff's position and deemphasizes Defendants'

7

position. Further, Defendants seek to add a line referencing the statute of limitations and ask to replace "Captain George's" with "Defendants" throughout. Plaintiff agrees, at least in part, to these last two changes proposed by Defendants. [ECF No.11–12.] If the statute of limitations is referenced, Plaintiff similarly seeks a reference to the potential for equitable tolling.

Having reviewed the positions of the parties, the court concludes that removal of the bulleted list is appropriate—describing Plaintiff's position in paragraph format is just as explanatory and informative as the requested list. Further, the court concludes that including some language related to the statute of limitations is appropriate. In line with these rulings, and the points agreed to by the parties, the court approves the following modified language:

> The plaintiff alleges that the Defendants have violated the Fair Labor Standards Act ("FLSA") by retaining a portion of servers' tips, requiring servers to share tips with silverware rollers, requiring servers to pay for uniform shirts, paying servers at the wrong wage rate, and failing to provide servers with the required tip-credit notice.
>
> Plaintiff alleges that Defendants applied these policies to all of the servers at their Myrtle Beach location, and therefore seeks payment of unpaid back wages in the amount of the difference between full minimum wage and the tipped minimum wage rate servers were paid for all hours worked, in addition to other relief, including double damages, attorneys' fees, and costs for all of the servers at Captain George's in Myrtle Beach.
>
> Each of the Defendants denies that they violated the FLSA. Some of the Defendants deny that they are "employers" under the FLSA. And all of the Defendants contends that the claims against them are either barred or limited by the statute of limitations.
>
> Although this notice and its contents have been authorized by the Court, the Court takes no position regarding the merits of Plaintiff's claims or Defendants' defenses.

3. **Section 3: What are my options?**

At the outset, the court will begin with the points on which the parties agree. Defendants object to the formatting of Section 3. They ask that it be simplified and propose the *Gagliastre* language

as an alternative. [ECF No. 18 at p.16.] Plaintiff does not object to this proposal and, therefore, the court directs Plaintiff to revise Section 3 to reflect the same formatting as the notice in *Gagliastre*. [ECF No. 20 at p.12.][2] Additionally, Defendants ask for the addition of the following line: "You also have the option to obtain your own counsel to advise you on your rights and file suit on your behalf should you choose to do so." [ECF No. 18 at p.16.] While Plaintiff believes this line is unnecessary, she does not object to this addition. [ECF No. 20 at p.14.] The court will approve its incorporation into the revised notice.

Defendants also ask for two proposed additions to the "details" portion of Section 3. First, Defendants ask for a line stating, "If you do not prevail on your claim, court costs and expenses may possibly be assessed against you." [ECF No. 18 at p.17.] Second, they ask for a sentence providing, "If you choose to join the suit, you may be required to participate in discovery and testify at trial." *Id.* Plaintiff opposes both proposed changes. [ECF No. 20 at p. 13.]

Courts in this District have found the text related to costs and expenses both reasonable and appropriate. *See, e.g., Turner v. BFI Waste Servs., Inc.*, 268 F. Supp. 3d 831 (D.S.C. 2017); *McCoy v. RP, Inc.*, No. 2:14-cv-3171, 2015 WL 6157306 (D.S.C. Oct. 19, 2015). The undersigned agrees with the analysis in those cases. Section 3 should be revised to include the language requested by Defendants.

As to the request to include a line regarding participation in discovery and trial, however, the court has not found any case in this District accepting the proposed language. In this regard, the undersigned believes this type of language may be appropriate in a nationwide-class situation, so that members know that they may have to appear in another state for a deposition or trial. *See,*

---

[2] As noted above, any prior references to a 90-day opt-in period must be changed to a 60-day opt-in period.

9

*e.g., Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 423 (W.D. Okla. 2017) (agreeing to include language in a nationwide case, so parties knew they may be subject to a deposition in Oklahoma). Because this proposed collective encompasses servers at only one of Defendants' locations, the undersigned declines to require Plaintiff to include the requested language in the revised notice.

Finally, Defendants object to the four invitations for potential class members to contact Plaintiff's counsel. [ECF No. 18 at p.17.] Plaintiff maintains that these references are appropriate. [ECF No. 20 at p.14.] To the extent this dispute is not resolved through the court's approval of the Gagliastre Section 3 to replace much of the Section 3 in this notice, the court agrees with Defendants that one reference in Section 6 is sufficient and appropriate.

   4. **Section 4: Retaliation.**

Defendants ask the court to replace the current Section 4 with the "no retaliation" language from *Gagliastre*. [ECF No. 18 at p.18.] Plaintiff maintains that the section, as written, is appropriate, but agree to changing the last line to read, "If you experience any retaliation, you should report it immediately to an attorney." [ECF No. 20 at pp.14–15.] The court grants Defendants' request to use the Gagliastre language in place of the current language in Section 4 and also approves the use of the last line from the current version of Section 4, incorporating Plaintiff's compromise language.

   5. **Section 6: The Attorneys Involved.**

Before reaching the point of disagreement, the court directs Plaintiff to correct the references to "drivers" in the revised notice. Defendants argue that notice does not appropriately describe the fee arrangement in this case. [ECF No. 18 at p.18.] They contend that while Plaintiff's counsel has agreed to take the case for a 1/3 contingency fee, the court will still need to approve any fee

10

award. *Id.* Defendants propose the following revised sentence, "The plaintiff has agreed to pay to Plaintiffs' Attorneys 1/3 of any money that is awarded and also to reimburse Plaintiffs' Attorneys for their costs if the claim is unsuccessful." *Id.* at pp.18–19.

Plaintiff, in response, argues that is important for opt-in plaintiffs to understand how Plaintiff's counsel will be paid. [ECF No. 20 at p.15.] In that regard, she does not object to revising the second sentence of the second paragraph to read, "The contingency fee agreement entitles Plaintiff's Attorneys to a 1/3 contingency fee on any amount awarded, plus advanced costs, subject to the approval of the Court." *Id.*

The court agrees with Plaintiff that Section 6 (with the references to "driver" corrected), with the proposed revision, is an appropriate description of the agreement.

**D. Email Notice.**

Having addressed the objections to the mail notice, the court turns to Defendants' objections to the email notice. Defendants argue that the proposed email includes unnecessary information and should not be a separate and additional form of advocacy. [ECF No. 18 at p.19.] Defendants propose correcting the issue with a new email, providing:

> I represent former servers at Captain George's Seafood Restaurant in Myrtle Beach, South Carolina in an action seeking to recover unpaid wages. The Court recently authorized my sending to you a notice regarding this action. Click this link—[link]—to view the Notice.

Plaintiff did not specifically respond to this argument in reply.

The court agrees with Defendants that a simplified email is appropriate. Plaintiff is directed to revise the proposed email in line with the above-approved language and resubmit it to the court for approval.

11

### E. Telephone Numbers.

Upon conditional certification, Plaintiff asks the court to require Defendants to produce "the names, last known address, last known email address, and phone number for the FLSA collective class." [ECF No. 9-1 at p.13.] Defendants agree that certain information must be provided, but they object to producing telephone numbers. [ECF No. 18 at p.19.] Defendants argue that to obtain this information, Plaintiff must show a "special need" for it. *Id.* (citing *Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 772 (D.S.C. 2017)). Because Plaintiff has not requested to send notice by phone or text message, Defendants argue that she has not identified the required "special need." Plaintiff's only response is that she is "entitled to this information anyway." [ECF No. 20 at p.15.] The court is not persuaded by Plaintiff's argument. Rather, it agrees with Defendants.

Defendants need only produce putative class members' names, last known addresses, and last known email addresses within 15 days of the court's approval of the revised notices.

### CONCLUSION

For the foregoing reasons, the court **GRANTS** Plaintiff's Motion Conditional Certification of a Collective Action. [ECF No. 9.] Plaintiff is directed to revise the notice and email notice in accordance with the above rulings and submit the same to the court for final approval by October 2, 2020.

**IT IS SO ORDERED.**

/s/Sherri A. Lydon
United States District Judge

Florence, South Carolina
September 28, 2020